|tKUHN, J.,
concurring in part and dissenting in part.
The majority finds that the evidence was insufficient to establish by a preponderance of the evidence that the January 2002 accident either caused Barnett’s neck and back condition or aggravated it. I concur in that finding. I dissent, however, from the majority’s finding that the OWC was not manifestly erroneous in concluding that the medical evidence failed to establish a causal connection between Barnett’s employment and his carpal tunnel syndrome.
The majority would ignore the entirety of Dr. Chiasson’s deposition testimony solely because Barnett’s counsel asked a single question that assumed Barnett’s work involved the use of a pressurized hose. And while the majority refers to the supervisor’s testimony that the hose used was a “regular garden hose with the tip cut off,” the majority conveniently ignores that the supervisor also described that the hose “was like a pressurized garden hose.” Regardless of whether Barnett’s work duties involved the use of a pressurized hose, Dr. Chiasson’s medical records establish that Barnett apprised Dr. Chiasson of his employment duties, such that Dr. Chiasson was able to form an opinion about whether Barnett’s work activities caused his carpal tunnel syndrome. When Barnett first sought treatment from Dr. Chiasson, Barnett completed a patient in *665 formation sheet that delineated his employment duties as including mechanical forklift operator, truck driver, tank washer, and working on a package line. Thus, Dr. Chiasson had | ^accurate information upon which to base his expert opinion other than the information regarding the pressurized hose referenced once by plaintiffs counsel during the deposition. The definitive question posed by plaintiffs counsel was “From the history that [Barnett] gave you was it your medical opinion that his employment was the cause of his carpal tunnel syndrome?” (Emphasis added.) Dr. Chiasson responded, “It certainly was a significant contributing factor.”
The majority likewise finds that Dr. Mussarat’s opinion should be rejected because plaintiffs counsel informed Dr. Mus-sarat that Barnett was working mostly as a mechanic, urging that this fact is not supported by the record. However, when defense counsel questioned what percentage of time Barnett would have to work as a mechanic in order for the carpal tunnel syndrome to develop, Dr. Mussarat opined, “I think it all depends on how much he worked and how long you’ve been working. Carpal tunnel can be involved with so many different types of work.... But generally if he was working as a mechanic, you’re using those screwdrivers and wrenches, you understand. That’s a very significant risk factor.” Thus, Dr. Mussa-rat’s opinion was not contingent upon a finding that Barnett’s work consisted primarily of mechanical work. Because the record clearly supports that Barnett’s work duties included mechanical work, there is no sound basis for rejecting Dr. Mussarat’s conclusions regarding the eau-sation of Barnett’s carpal tunnel syndrome.
When read in its entirety, the deposition testimony of Drs. Chiasson and Mussarat establishes by a preponderance of the evidence that Barnett’s work duties while employed by A & R caused his carpal tunnel syndrome. There is no reasonable factual basis to support a finding to the contrary; the evidence does not present two permissible views. Dr. Morgan, [..¡acknowledging that he did not have sufficient information on which to base an opinion, actually expressed no expert opinion regarding whether Barnett’s employment duties of tank washing and mechanical work caused his carpal tunnel syndrome. As such, Dr. Morgan’s testimony was insufficient to rebut the testimony of Drs. Chiasson and Mussarat, who both opined that Barnett’s work was a substantial factor in causing the carpal tunnel syndrome. The OWC’s determination that Barnett’s carpal tunnel syndrome was not causally connected to his employment activities is clearly wrong based on the evidence presented.
Accordingly, I conclude the OWC erred in dismissing Barnett’s claim for temporary, total disability benefits. Based on Dr. Chiasson’s testimony, Barnett established that he was temporarily totally disabled from performing any work from the date of his carpal tunnel release surgery on September 11, 2002, to his release to light duty work on October 24, 2002. Accordingly, Barnett has established that he was entitled to receive weekly disability benefits in the amount of $346.63 for the six weeks that he was disabled, or a total of $2,079.78. La. R.S. 23:1221(1); La. R.S. 23:1021(10).[1]
*666 The testimony of Drs. Mussarat and Chiasson establishes that the carpal tunnel release surgery was necessary treatment for Barnett’s work-related condition. A & R presented no countervailing evidence regarding the necessity of the surgery. Barnett established that he incurred costs in the amount of $7,573.04[2] related to Dr. Chiasson’s treatment and the release Lsurgery. Additionally, Barnett established that he incurred costs in the amount of $153.83 for prescription medications related to treatment of his carpal tunnel syndrome.[3] Thus, Barnett is entitled to a judgment in his favor against A & R for these medical expenses, totaling $7,726.87.
Louisiana Revised Statutes 23:1203 D governs Barnett’s entitlement to travel expenses and provides in pertinent part:
[T]he employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services [and] medicines ..., which the employer is required to furnish under this Section .... When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business.
Barnett established that he personally incurred the expenses of traveling to Dr. Chiasson’s office for treatment of his carpal tunnel syndrome. The total miles involved in this travel was 74 miles. Louisiana Administrative Code 4:V.Chapter 15, § 1504C(4)(b), p. 1129 establishes that the reimbursement rate in effect at that time for state employees’ use of their personal vehicle for state business was thirty-two cents per mile. Accordingly, Barnett is entitled to recover $23.68 for reimbursement of his travel expenses.
For these reasons, I concur in part and dissent in part.

. The record establishes that Barnett received disability pay during this six-week period pursuant to a disability policy that was funded by both Barnett and A & R. Because A & R did not establish the proportion of its funding, it has not established that it is entitled to a credit pursuant to Louisiana Revised Statutes 23:1225 C for a specific amount of the disability benefits received by Barnett.

. These costs include Dr. Chiasson’s surgical fee of $2,710.00, Dr. Chiasson’s office visits totaling $426.00, the outpatient hospital fees of $3,797.04, and Dr. Brian Ball's anesthesia fees for the carpal tunnel release surgery in the amount of $640.00.

. Barnett also seeks to recover physical therapy expenses, but he has not established that any of these expenses were related to the treatment of his carpal tunnel syndrome. Thus, he is not entitled to recover these expenses.